## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                    |        |                        |
|------------------------------------|--------|------------------------|
| BIRCHARD B. ALLEN, III AND         | *      |                        |
| CANDYCE GOLDEN                     | *      |                        |
|                                    | *      |                        |
| v.                                 | *      | Civil No. JFM-14-3257  |
|                                    | *      |                        |
| SILVERMAN THEOLOGOU, LLP           | *      |                        |
|                                    | *      |                        |

******

## MEMORANDUM

Plaintiffs Birchard B. Allen III ("Allen") and Candyce Golden ("Golden") (collectively "plaintiffs") bring this putative class action lawsuit against Silverman Theologou LLP ("Silverman"), alleging that its debt-collection practice violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq* and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq*.  Now pending is a motion to dismiss all but one of plaintiffs' claims.  The motion is fully briefed, and no oral argument is necessary.  *See* Local Rule 105.6.  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Silverman is a limited liability partnership that was formed in Maryland in 2009.  (Am. Compl., ECF No. 18 ¶ 14).  It has several practice areas, including "Consumer and Commercial Collections."  *Id.*  Plaintiffs claim that Silverman is a "collection agency" as defined by the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101(c), but does not have an active collection agency license as required by § 7-301(a).  (*Id.* ¶¶ 17–19).  One of Silverman's clients is SECU Credit Union ("SECU"), who employed Silverman to collect on debts owed to SECU by plaintiffs Allen and Golden.

Allen defaulted on a debt held by SECU for money he used to purchase personal items and services including "gasoline purchases, lunch and breakfast purchases . . . and payments for auto repairs." (*Id.* ¶ 12). SECU hired Silverman "on or around July 28, 2014" to collect the Allen debt, and Silverman first contacted Allen by sending a letter dated July 31, 2014. (*Id.* ¶¶ 22, 24). Silverman allegedly identified itself in those emails as collecting a debt, required by 15 U.S.C. § 1692(e)(11). *Id.* Allen also alleges that a "non-attorney debt collector" named Donald "Mike" Everette called several times, including on August 5, 12, 14, 22, and 26, 2014. (*Id.* ¶¶ 26, 52).[1] Everette did not, however, disclose that he was calling on behalf of a debt collector as required by § 1692(e)(11). Eventually Allen spoke with Everette, who provided Allen with "three options for payment to avoid a lawsuit," and then followed up with several more "curtesy calls" that he claimed were "final." (*Id.* ¶¶ 33–37). Allen does not allege that he ever made any payments on his SECU debt to Silverman.

Golden alleges she similarly incurred and later defaulted on a debt owed to SECU "that was primarily for personal, family and/or household purposes." (*Id.* ¶ 40). SECU employed Silverman in February 2014 to collect Golden's debt, and Silverman began contacting her. (*Id.* ¶¶ 42–44). For example, Golden received a call from SECU agent Brian Baker—allegedly not a licensed lawyer—asking her to set up a repayment plan. (*Id.* ¶ 48). Golden did, and began making regular payments under the plan to Silverman. (*Id.* ¶¶ 49–51). Despite those payments, Golden claims that she also received "harassing phone calls and voicemails from" Everette, who did not disclose he was calling on behalf of a debt collector. (*Id.* ¶ 52). Everette would allegedly make incorrect statements on these calls, such as stating Golden's payment was due on a specific date and that she was behind in her payments. (*Id.* ¶¶ 53–63). Everette also told Golden that

---

[1] Plaintiffs' amended complaint also spells Everette's name as "Everett," but I will assume it is Everette.

"We can sue you in the morning. We can garnish you in the morning up to 27 percent," even though Silverman lacks that authority.  (*Id.* ¶ 62).

Allen filed a complaint in the United States District Court for the District of Maryland on October 17, 2014, and an amended complaint (which added Golden as co-plaintiff) on November 17, 2014.  (ECF No. 18).  Plaintiffs' amended complaint contains two counts.  In Count I, they allege Silverman has violated three provisions of the FDCPA: (1) 15 U.S.C. § 1692e(11), which requires a debt collector to disclose that it is "attempting to collect a debt and that any information obtained will be used for that purpose"; (2) § 1692e(5), which prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken"; and (3) § 1692f(1), which prohibits a debt collector from collecting an amount owed on a debt "unless such amount is expressly authorized by the agreement creating the debt." Count II of plaintiffs' amended complaint alleges that Silverman violated § 14-202(8) of the MCDCA, which prohibits a debt collector from claiming, attempting, or threatening "to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14-202(8).[2]

Silverman filed a renewed motion to dismiss the amended complaint on December 11, 2014.  (ECF No. 21).[3]  It seeks to dismiss all of plaintiffs' claims except their 15 U.S.C. § 1692e(11) claim in Count I.

## STANDARD

When ruling on a motion brought under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d

---

[2] On October 24, 2014 plaintiffs also filed a motion to certify the putative class.  (ECF No. 9). Briefing was stayed as to that motion on November 10, 2014 pending the court's ruling on Silverman's motion to dismiss the original complaint.  (ECF No. 17).
[3] The earlier motion to dismiss (ECF No. 14), therefore, is moot.

472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (internal citations and quotation marks omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Plaintiffs' claims under the FDCPA and MCDCA are premised on the same theory: Silverman attempted to collect debts without obtaining the license required by Maryland law. Accordingly, this opinion first discusses whether Silverman is a "collection agency" as defined by MCALA § 7-101(c) and § 7-102(b)(9) and thus subject to its licensing regulations. Silverman's arguments regarding the sufficiency of Golden's pleading and the merits of plaintiffs' claims under the MCDCA and FDCPA are then addressed in turn.

## I.  Silverman is a "Collection Agency" Governed by the MCALA.

The first issue is a question of statutory interpretation: is Silverman—a law firm with several practice groups, one of which is debt collection—a "debt collector" governed by MCALA's licensing requirements, or instead exempt pursuant to an exception for lawyers. Based on the standard at the motion to dismiss stage and the detail in plaintiffs' amended complaint, I am persuaded that Silverman is a "debt collector" not subject to the lawyer exception.  Silverman argues in the alternative that if it is governed by the MCALA, the statute is an unconstitutional intrusion by the Maryland executive branch into the judiciary, which governs the practice of law.  That argument is unpersuasive.

### A.  Silverman is a "collection agency" and does not qualify for the lawyer exception.

Plaintiffs have sufficiently alleged that Silverman is a "collection agency" under the MCALA.  They claim that Silverman "engages directly or indirectly in the business of: (1)(i) collecting for, or soliciting from another, a consumer claim" by attempting to collect consumer debts on behalf of its clients.  Md. Code Ann., Bus. Reg. § 7-101(c).  In addition, plaintiffs allege that Silverman refers to itself and its employees as "Debt Collectors within the meaning of [15] U.S.C. § 1692," the FDCPA, in its e-mail communications.  (ECF No. 18 ¶ 15).  Although the FDCPA and MCALA are independent statutes,  the FDCPA's definition of "debt collector" is virtually identical to the MCALA's.  *Compare* 15 U.S.C. § 1692a(6), *with* Md. Code Ann., Bus. Reg. § 7-101(c)(1)(i).  Accordingly, Silverman is a "collection agency" as defined by § 7-101(c).

The MCALA, however, exempts lawyers from its regulations who otherwise qualify as a "collection agency" unless:

(9) . . . the lawyer has an employee who:

(i) is not a lawyer; and

(ii) is engaged primarily to solicit debts for collection or primarily makes
contact with a debtor to collect or adjust a debt through a procedure
identified with the operation of a collection agency

*See* Md. Code Ann., Bus. Reg. § 7-102(9).  Of the courts that have interpreted this provision and

applied it to law firms, two held that the firm qualified for the exception.  One did so outright:

*Murray v. Bierman, Geesing, Ward & Wood, LLC*, No. 11-CV-1623, 2012 WL 4480679, at *5

(D. Md. Sept. 27, 2012) ("MCALA's licensing requirement does not apply to lawyers collecting

debts for clients.  *See* Md. Code Ann., Bus. Reg., § 7–102(b)(9).  It is undisputed that the trustee

Defendants are attorneys, bringing them squarely within the exemption from MCALA's

licensing requirements.").  The other court based its decision on the fact that the plaintiffs did

"not, however, allege any facts supporting the claim that [the employee] is primarily engaged to

solicit debts for collection."  *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514,

527 (D. Md. 2013).  I find the *Grant-Fletcher* court's analysis to be the proper inquiry, and in

this case both sides focus their dispute on whether plaintiffs have sufficiently alleged that at least

one Silverman employee "primarily" solicits debts.

Plaintiffs' amended complaint names Everette as an unlicensed attorney who worked

"primarily to solicit debts for collection."  Everette allegedly contacted Allen and Golden several

times over the phone, often leaving voicemails when he did not speak with them personally.

(ECF No. 18 ¶¶ 31–37, 52–63).  Plaintiffs allege specific dates on which these phone calls

occurred.  In addition to the calls' frequency, plaintiffs also describe the content—collecting on

plaintiffs' SECU debts.  For example, Everette allegedly threatened plaintiffs, asked them for

their debit/credit information, and provided Golden the wrong date on which her payments were

due.  This degree of detail in the amended complaint, although merely allegations, distinguishes

this case from *Grant-Fletcher*.  That court then granted summary judgment because plaintiffs

6

had failed to produce sufficient evidence to prove that the law firm's receptionist was the "employee" who prevented the law firm from qualifying for the § 7-102(9) exception. *Grant-Fletcher*, 964 F. Supp. 2d at 527. The record was devoid of any evidence that the receptionist contacted the plaintiff, nor did it contain any facts demonstrating "an act of debt collection." *Id.* Instead, the plaintiff initiated contact with the receptionist, who performed her duty by directing the plaintiff's call and providing information. Finally, the record had evidence of a single phone call, which the court held "cannot possible show that [the receptionist] is engaged primarily to collect debt." *Id.*

Here, in contrast, plaintiffs have alleged numerous phone calls initiated by Everette that related specifically to their SECU debts. Considering that this case has not yet entered discovery, it is unclear how much more detail plaintiffs could allege in a complaint. Accepting their allegations as true, Silverman is a "collection agency" under the MCALA that does not qualify for the § 7-102(9) "lawyer exception."

**B. Maryland may constitutionally regulate Silverman as a "collection agency."**

If Silverman is a "collection agency" subject to the MCALA's regulations, it argues in the alternative that such regulation is an unconstitutional "usurpation of the function of the judicial branch of government" by the executive branch. (ECF No. 21-1 at p. 18). Silverman justifies this argument by citing to numerous Maryland Court of Appeals decisions which have reaffirmed the principle that it has the exclusive power to regulate members of the bar. *See, e.g.*, *In re Application of Kimmer*, 896 A.2d 1006, 1015 (Md. 2006). This exclusive power naturally extends, Silverman argues, to disciplining lawyers who "improperly act as a collection agency." Accordingly, the MCALA's regulation of law firms unlawfully intrudes on Maryland's judicial

branch.  This argument is unpersuasive.  It has also been implicitly rejected by the United States Supreme Court.

Silverman's separation of powers argument is unpersuasive because, as plaintiffs note, Maryland imposes numerous other regulations and licensing requirements on practicing attorneys that are accepted as constitutional.  For example, plaintiffs cite Md. Code Ann., Bus. Reg. § 4-401(c)(1) which requires any party acting as an athlete's agent—presumably including an attorney or law firm—to obtain a license.  That regulation, like MCALA's licensing requirement for collection agencies, is not regulating lawyers because they are lawyers, but instead because they are acting as an athlete's agent.  Lawyers are not immune from state regulation simply because they are supervised by the state's judiciary.

Regarding debt collection regulations specifically, the Supreme Court held that a lawyer who "regularly, through litigation, tries to collect consumer debts" is subject to the FDCPA.  *Heintz v. Jenkins*, 514 U.S. 291 (1995) (internal quotation marks omitted).  After observing that the FDCPA had previously contained an exception for lawyers which Congress repealed in 1986, the *Heintz* Court held that a lawyer who met "the general debt collector definition" was subject to the statute.  *Id.* at 294–95 (internal quotation marks omitted).  The Court based its holding on statutory interpretation and did not discuss any constitutional concerns with subjecting lawyers who engage in debt collection to the FDCPA.  Although the *Heintz* Court did not address state regulations like those imposed by the MCALA, it logically follows from its holding that lawyers may also be regulated by analogous state debt collection statutes.  If Silverman fits within the statutory definition of a "collection agency" under the MCALA, therefore, Maryland may constitutionally impose licensing regulations on it.

Case 1:14-cv-03257-JFM   Document 24   Filed 05/06/15   Page 9 of 15

**II.  Golden Has Sufficiently Pleaded That Her Debts are Encompassed by Both Statutes.**

Before discussing the substantive merits of plaintiffs' amended complaint, Silverman argues that Golden's claims under both the FDCPA and MCDCA should be dismissed because she has not adequately pleaded that her debt was the kind intended to be encompassed by the statutes.

Under the FDCPA, a plaintiff must allege that her "debt" arose from a "transaction . . . primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  Courts have described the FDCPA's definition of debt as "broad."  *See, e.g.*, *Duffy v. Landberg*, 133 F.3d 1120, 1123 (8th Cir. 1998).  The analogous MCDCA provision is similar, defining "consumer transaction[s]" as "any transaction . . . for personal, family, or household purposes."  Md. Code Ann., Com. Law § 14-201(c).  Here, Golden alleges that her debt "was primarily for personal, family and/or household purposes," and "was used for similar personal and household uses as Mr. Allen's."  (ECF No. 18 ¶¶ 13, 41).  The reference to Allen's debt is explained by ¶ 12 of the amended complaint, in which Allen alleges that his debt was "used for, among other things, gasoline purchases, lunch and breakfast purchases, cash withdrawals . . . ."  (*Id.* ¶ 12).

This is sufficient to establish Golden's debt as the kind covered by both statutes.  In a factually similar case, a court held that the plaintiff's allegation that her debt resulted "for house and personal purposes only" was sufficient.  *Grant-Fletcher v. Brachfeld Law Grp., PC*, No. 11-2072, 2012 WL 2523094, at *2 (D. Md. June 28, 2012).  Golden pleads exactly that, and also incorporates by reference Allen's detailed description of the various personal and household objects and services he purchased with his debt.  No more is required.

9

**III. Plaintiffs Have Not Adequately Pleaded a Claim under the MCDCA.**

Plaintiffs allege that Silverman violated MCDCA § 14-202(8).  To establish a prima facie case, plaintiffs must allege that: (1) Silverman did not possess the right to collect on the SECU debts, and (2) attempted to collect on the debts despite knowing it lacked the right to do so.  *See, e.g.*, *Pugh v. Corelogic Credco, LLC*, No. 13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013).  Here, plaintiffs claim Silverman lacked the right to collect on the SECU debts because it did not obtain the required MCALA license.  Silverman argues that their claim should be dismissed because plaintiffs have not adequately alleged a prima facie case under § 14-202(8), nor have they alleged proximate damages that are recoverable under the MCDCA.  Silverman is correct as to the latter argument.

**A. Plaintiffs have sufficiently pleaded a prima facie case.**

In addition to alleging that Silverman lacked the required license, plaintiffs must also establish as part of their MCDCA prima facie case that Silverman acted "with knowledge" that it lacked the right to collect on the SECU debts without a license.  Md. Code Ann., Com. Law § 14-202(8).  Silverman argues that plaintiffs' MCDCA claim should be dismissed because they concede that the underlying SECU debts are valid, giving SECU the right to collect on the debt through Silverman.  Although that is true, the relevant question is not the validity of the debts, but instead whether Silverman had knowledge that it lacked the right to collect on the debts because it was unlicensed.

Silverman cites cases in which the right to relief under § 14-202(8) is described as requiring proof that a debt collector "acted with knowledge as to the *invalidity* of the *debt*."  *See, e.g.*, *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2012) (emphasis added), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013).  Here, plaintiffs concede that their

SECU debts are valid.  (ECF No. 18 ¶¶ 12–13, 20, 40).  They are not seeking to contest the

debts, however, but instead challenge Silverman's ability to collect on those debts when it is

unlicensed.  This theory of recovery distinguishes this case from *Stewart*, where plaintiffs sought

to evade repaying their debt by citing "errors or disputes in the process or procedure of collecting

legitimate, undisputed debts" such as improper signatures on deed documentation.  *Stewart*, 859

F. Supp. 2d at 770.

      Courts have held that an example of lacking the "right" to collect on debts is when a

collection agency is improperly licensed under the MCALA.  *See, e.g.*, *Bradshaw v. Hilco*

*Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011) (granting summary judgment against

unlicensed defendant who filed lawsuits to collect debts).  Moreover, a collection agency may

not avoid liability under the MCDCA by pleading ignorance about its obligation to obtain a

license under the MCALA.  *E.g.*, *Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012)

(holding that ignorance regarding MCALA's licensing requirements "is a mistake of law that

does not immunize Defendants from liability under the MCDCA").  The defendants in *Fontell*

were unlicensed and had sent "multiple collection notices and placed a lien on [plaintiff's]

property."  *Id.*  Similarly, the defendant in *Bradshaw* purchased debt and then filed lawsuits

against the debtors to collect even though it lacked the MCALA license.  *Bradshaw*, 765 F.

Supp. 2d at 722, 732 (holding that the defendant failed "to abide by Maryland's licensing laws

for debt collectors").

      Here, the facts are analogous to those in *Fontell* and *Bradshaw*.  Plaintiffs have alleged

that Silverman employee Everette  made several phone calls to plaintiffs that were directed at

collecting on their debts owed to SECU.  The content of those conversations (and voicemails)

often involved coercive statements and incorrect facts.  When all these phone calls were made,

Silverman lacked the proper MCALA license.  As discussed above, plaintiffs have adequately

alleged that Silverman does not qualify for the "lawyer exception."  Because ignorance of the

law is an invalid defense in this context, plaintiffs have sufficiently pleaded a prima facie case

under MCDCA § 14-202(8).

**B.  Plaintiffs have not adequately alleged compensable damages under the MCDCA.**

In addition to establishing a prima facie case, plaintiffs must also adequately plead they

are entitled to compensable damages under the MCDCA.  *See* Md. Code Ann., Com. Law § 14-

203 ("A collector who violates any provision of this subtitle is liable for any damage proximately

caused by the violation . . . .").  Here, Silverman argues that plaintiffs have not claimed any

actual damages proximately caused by Silverman's alleged violations of the MCDCA.  That

argument is correct, and Count II is therefore dismissed.

In contrast to the FDCPA, which permits recovery of statutory damages and attorney's

fees, MCDCA § 14-203 only allows recovery of damages proximately caused by its violation,

"including damages for emotional distress or mental anguish suffered with or without

accompanying physical injury."  *Compare* Md. Code Ann., Com. Law § 14-203, *with* 15 U.S.C.

§ 1692k(a); *see also Spencer*, 81 F. Supp. 2d at 596–97.  Under the MCDCA, therefore, an

example of compensable proximate damages are fees improperly added to a plaintiff's debt by

the collection agency.  *See Allstate Lien & Recovery Corp. v. Stansbury*, 101 A.3d 520, 530 (Md.

Court. Spec. App. 2014) ("In requiring [plaintiff] to pay the $1,000 'costs of process' to redeem

his vehicle, appellants were attempting to enforce a right that did not exist.").  On the other hand,

a plaintiff may not claim "statutory damages . . . any attorney's fees, court costs, any punitive

damages, and any other relief as the court deems proper" under the MCDCA.  *Richardson v.*

*Rosenberg & Assocs. LLC*, 13-0822, 2014 WL 823655, at *9 (D. Md. Feb. 27, 2014) (granting

motion to dismiss plaintiff's MCDCA claim).  Moreover, as discussed above, MCDCA § 14-202(8) can be used to challenge "the methods used to collect the alleged debt," but not the validity of that debt.  *Fontell*, 870 F. Supp. 2d at 413.  To illustrate, a court held in an analogous case that a plaintiff's claim under the Maryland Consumer Protection Act ("MCPA") was deficient because it did not allege that the defendant's alleged violation caused "any specific harm, apart from the debt that [the plaintiff] already owed."  *Willis v. Countrywide Home Loans Serv., L.P.*, No. 09-1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009).

Applying those principles to this case, plaintiffs have not sufficiently alleged that Silverman's lack of a required license under MCALA proximately caused them to suffer actual damages.  Their only claim for damages under the MCDCA is for "actual damages in the amount of funds collected by Defendant from Plaintiffs and the class they seek to represent."  (ECF No. 18 ¶ 79b).  The amended complaint does not allege any emotional or mental injuries, nor does it claim that co-plaintiff Allen ever entered into a repayment plan or paid any money on his SECU debt to Silverman.  Accordingly, his MCDCA claim is dismissed.  As for Golden, she does allege that she entered into a repayment plan with Silverman and made timely payments.  (ECF No. 18 ¶¶ 50–51).  Even though Silverman may have unlawfully collected money in violation of the MCDCA, however, the money Golden paid does not constitute compensable "actual damages."  Those payments were made on her concededly valid SECU debt, and there is no allegation that the money went elsewhere.  The practical effect of awarding Golden the payments she made to Silverman would be to simply increase her SECU debt by that exact amount—Golden would recover the money she paid Silverman only to immediately owe it back to SECU.

If the Maryland Legislature wants to amend the MCDCA to add statutory damages, it may.  But as currently drafted plaintiffs may only recover actual damages, which excludes

payments made on a lawful and undisputed debt.  *See Willis*, 2009 WL 5206475, at *6.

Accordingly, Golden's MCDCA claim is also dismissed.  Without a valid claim from either

plaintiff, Silverman's motion to dismiss Count II of plaintiffs' complaint is granted.[4]

## IV. Plaintiffs Have Adequately Pleaded Their Claims under the FDCPA.

Plaintiffs' claims under the FDCPA do not suffer from the defects described above.  The

FDCPA does not contain any exemptions for lawyers or law firms, and even if it did Silverman

allegedly acknowledged it was governed by the FDCPA in its email communications.  Regarding

plaintiffs' requested damages, the FDCPA provides for statutory damages in addition to actual

damages.  The fact that plaintiffs cannot recover for money they paid Silverman toward the

legitimate SECU debts, therefore, does not prevent them from recovering monetary relief for

FDCPA violations committed by Silverman.

As for those FDCPA violations, courts have held that "a violation of Maryland's

MCALA licensing requirement may support a cause of action under the FDCPA."  *Bradshaw*,

765 F. Supp. 2d at 729.  Here, plaintiffs have sufficiently alleged that Silverman contacted them

numerous times regarding the SECU debts—and succeeded in signing up Golden on a repayment

plan—all without the required MCALA license.  That allegation, if ultimately proved, would

likely entitle plaintiffs to at least statutory damages under the FDCPA.  Accordingly,

Silverman's motion to dismiss Count I of plaintiffs' complaint is denied.

## CONCLUSION

For the reasons stated above, Silverman's motion to dismiss is granted as to Count II of

plaintiffs' amended complaint, and denied as to Count I.  A separate order follows.

---

[4] Plaintiffs request leave to file a second amended complaint if Silverman's motion is granted in whole or in part.  (ECF No. 22 at pp. 24–25).  That request is denied.  Plaintiffs have already filed an amended complaint in response to Silverman's first motion to dismiss, and have now failed twice to allege any actual damages that are recoverable under the MCDCA.

_____05/06/2015_____                    _____/s/_____
Date                                         J. Frederick Motz
                                             United States District Judge